**Robert PIAMPIANO, Plaintiff,**

**v.**

**CENTRAL MAINE POWER COMPANY, Defendant.**

**No. CIV. 02–41–P–C.**

United States District Court, D. Maine.

Sept. 24, 2002.

Peter J. Rubin, John M.R. Paterson, Daniel J. Mitchell, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Robert J Piampiano, plaintiff.

William J. Kayatta, Jr., Mark E. Porada, Portland, ME, for Central Maine Power Company, defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge filed with the Court on June 19, 2002, with copies to counsel, his Recommended Decision on Motion to Dismiss (Docket No. 10). Defendant, having been granted an enlargement of time in which to do so, filed his objection to the Recommended Decision on July 12, 2002 (Docket No. 12). Plaintiff, having been granted an enlargement of time in which to do so, filed his response to Defendant's objection on August 5, 2002, (Docket No. 14). This Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, it is **ORDERED** as follows:

(1) Defendant's objection is hereby **DENIED**;

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(3) Defendant's Motion to Dismiss is hereby **DENIED.**

## RECOMMENDED DECISION ON MOTION TO DISMISS

DAVID M. COHEN, United States Magistrate Judge.

The defendant, Central Maine Power Company ("CMP"), moves to dismiss this removed action arising out of the provision of electric power to a new private residence. I recommend that the court deny the motion.

### I. Applicable Legal Standard

The defendant's motion invokes Fed. R.Civ.P. 12(b)(6). Defendant's Motion to Dismiss, etc. ("Motion") (Docket No. 5) at 1. "When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996); *see also Tobin v. University of Maine Sys.*, 59 F.Supp.2d 87, 89 (D.Me.1999).

### II. Factual Background

The complaint makes the following relevant factual allegations.

The plaintiff is a resident of Cumberland, Maine who obtains electric service from the defendant for his residence. Complaint (Docket No. 1–1) ¶¶ 1–2. In 2000 the plaintiff and his wife built their residence about 1000 feet from the nearest public road and CMP utility pole. *Id.* ¶ 3. The plaintiff understood that, because the house would be located more than 75 feet from the defendant's power distribution lines, he would be required to construct and maintain a private line to carry electric power from the defendant's distribution lines to his house. *Id.* ¶ 4. The plaintiff had the choice either to pay the defendant to construct the line or to pay an independent contractor to do so according to the defendant's engineering specifications; in either event, the plaintiff would own the private line. *Id.* The plaintiff chose the latter option and a private contractor constructed the private line at a cost to the plaintiff of $12,860. *Id.* ¶ 5.

Upon completion of the private line, the plaintiff contacted the defendant and requested that electrical service be connected to the house. *Id.* ¶ 6. The defendant inspected the private line and informed the plaintiff that he would be required to sign a "customer-owned line contract" as a condition of receiving service. *Id.* ¶¶ 6–7. That contract provided, *inter alia,* that if the defendant decided that it was "necessary to own all or part of the [plaintiff's] Private Line in order to serve another customer or customers of CMP, [the plaintiff] shall convey all or part of the Private Line, to the extent needed to serve other customer or customers together with such easements as CMP may require to operate and maintain the line." *Id.* ¶ 7. The contract also provided that the "Customer's conveyance of the Private Line and easements shall be at no cost to CMP" but that "if CMP acquires the Private Line and easements within five (5) years of the date of this contract, CMP shall provide a Development Incentive Payment to the Cus-

tomer as other customers take service directly from the acquired line during the five (5) year term, in accordance with CMP's Terms and Conditions as they are on file with the M[aine] P[ublic] U[tilities] C[ommission]." *Id.* ¶ 8.

Each time a new customer connects to the plaintiff's private line within five years after the signing of the contract, the new customer pays a fee of $500 to the defendant which the defendant in turn pays to the plaintiff (the "Development Incentive Payment"). *Id.* ¶ 9. If a new customer connects to the line after five years, no payments will be made to the plaintiff. *Id.* These procedures are embodied in the CMP Terms and Conditions that were approved by the Maine Public Utilities Commission to take effect January 1, 2000. *Id.* ¶ 10.

When the plaintiff was presented with the contract he demanded that the above-described terms be removed. *Id.* ¶ 11. The defendant refused to remove or modify these terms and informed the plaintiff that it would not provide him with electric service unless he signed the contract as presented. *Id.* ¶ 12. The plaintiff signed the contract on or about January 5, 2001 under written protest because he had no choice other than to sign if he wished to obtain electric service. *Id.* ¶ 13. The defendant then began providing electric service to the plaintiff's house. *Id.*

After the plaintiff signed the contract, a neighbor contacted the defendant and asked to be connected to the plaintiff's private line. *Id.* ¶ 14. The defendant then wrote to the plaintiff and demanded that he execute a line extension conveyance transferring a portion of the private line and a standard easement deed conveying a real estate easement under the corresponding portion of the private line in accordance with the terms of the contract. *Id.* The plaintiff signed and returned these

documents under written protest. *Id.* As of the date of filing of the plaintiff's complaint, the plaintiff had not been paid anything for this conveyance of his property. *Id.* ¶ 15.

## III. Discussion

The complaint includes three counts. The first alleges an unconstitutional taking of property under color of state law, a claim asserted under 42 U.S.C. § 1983. Complaint ¶¶ 24–29. The second alleges a state-law claim of trespass, and the third alleges a state-law claim of conversion. *Id.* ¶¶ 30–38. The defendant seeks dismissal of all of these claims.

### A. Documents to be Considered

An initial issue has been framed by the parties concerning the scope of materials outside the complaint to be considered by the court in connection with the motion to dismiss.

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.

There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. When the complaint relies upon a document, whose authenticity is not challenged, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir.2001) (citations and internal quotation marks omitted).

When a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings, and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6). When a document has been incorporated by reference into the pleadings, a defendant may introduce the document in support of its motion to dismiss. In order for a document to be incorporated into the pleadings, the Court must find that the document is referred to in the plaintiff's complaint and central to a claim. A plaintiff's mere reference to a document or limited quotation from a document in a complaint does not render the document incorporated by reference.

*Goodman v. President & Trustees of Bowdoin College*, 135 F.Supp.2d 40, 46–47 (D.Me.2001) (citations and internal punctuation omitted).

Here, the defendant has submitted eight documents in support of its motion to dismiss: (i) an order of the Maine Public Utilities Commission dated November 10, 1999; (ii) a document represented to be CMP's current Terms and Conditions; (iii) the customer-owned line contract between the plaintiff and CMP; (iv) a warranty deed from Brenda T. Piampiano to Matthew and Karen Pieper dated June 16, 1998; (v) a warranty deed from Matthew and Karen Pieper to Bruce S. Wildes and Nancy J.S. Wildes dated December 9, 1998; (vi) the line extension conveyance between the plaintiff and CMP; (vii) the standard easement deed between the plaintiff and CMP; and (viii) a document represented to be the Terms and Conditions of Bangor Hydro–Electric. Declaration of Counsel in Support of Defendant's Motion to Dismiss (Docket No. 6) & exhibits thereto. The plaintiff contends that some of this evidence is "beyond the scope

of the Complaint," observing that his complaint neither refers to nor relies upon several of these documents. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Objection") (Docket No. 8) at 5, 6–8. The plaintiff has submitted an additional eight documents "only for the purpose of rebutting the overreaching approach taken by CMP," *id.* at 11 n. 7, all of which apparently have been taken from the files of the Maine Public Utilities Commission, Affidavit of Daniel J. Mitchell, Esq. (submitted with Objection). The defendant responds that all of the documents at issue are either public records or are not disputed as to authenticity and are "germane to the claims made." Defendant's Reply Brief in Support of Its Motion to Dismiss ("Reply") (Docket No. 9) at 2.

However "germane" the documents may be, that is not the test applied by this court. The complaint's factual allegations are expressly linked to, or necessarily depend on, only four of the documents at issue: (i) the customer-owned line contract, Complaint Introduction & ¶¶ 7–9, 11–14, 16; (ii) CMP's Terms and Conditions, *id.* ¶¶ 8, 10; (iii) the line extension conveyance, *id.* ¶ 14; and (iv) the standard easement deed, *id.* While the remaining documents may well be public documents, the authenticity of which has not been challenged, this court when considering a motion to dismiss brought at the outset of an action will limit its evaluation of material outside the pleadings to documents that may be "deem[ed] 'integral' to assessing the sufficiency of the allegations in the complaint." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir.2000). It is the suffi-

ciency of those allegations that is at issue at this stage of the proceedings and not whether the plaintiff will be able to prove them. Only the four listed documents meet this test; I will not consider the other documents in connection with my analysis of the motion to dismiss.

## B. Count I

Count I alleges that the defendant has taken the property of the plaintiff without just compensation and that the defendant in doing so was acting under color of state law. Complaint ¶¶ 25–26. The plaintiff asserts this claim under 42 U.S.C. § 1983. *Id.* ¶ 28. That statute provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. The complaint alleges that the defendant is "a Maine corporation and regulated public utility." Complaint ¶ 2. The defendant contends that it is not a state actor and that it has not deprived the plaintiff of any property rights without just compensation. Motion at 9–17.[1]

With respect to the first of the two elements of this claim, the plaintiff does not dispute the defendant's characterization of itself as a private actor.

Since § 1983 is aimed at state action and state actors, persons victimized by the tortious conduct of private parties must ordinarily explore other avenues of re-

---

1. Given the nature of a motion to dismiss, it would be more appropriate to state the argument in the following manner: "The complaint fails to allege sufficiently that the defendant is a state actor and that it has taken the plaintiff's property without just compensation." The defendant's statement of its argument is more appropriate to a motion for summary judgment.

dress. To be sure, the rule is not absolute: private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983.

*Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 253–54 (1st Cir.1996) (citations omitted). The parties disagree on the question whether the complaint sufficiently alleges facts that would allow a factfinder to conclude that the defendant has so aligned itself with the state of Maine. Specifically, the complaint alleges that the defendant is a regulated public utility; that it acted in accordance with its Terms and Conditions that have been approved by the Maine Public Utilities Commission; and that it was acting pursuant to state statutory and regulatory authority and thus under color of state law. Complaint ¶¶ 2, 10, 25.

To find that the defendant was a state actor with respect to the plaintiff's claims, a factfinder must conclude either that it "performed an exclusively and traditionally public function;" the action that is the subject of the claim was created, coerced or encouraged by the state government; the defendant had a "symbiotic relationship with the government;" or there was an "entwinement" between the defendant and the state agency with which it interacts. *Logiodice v. Trustees of Maine Cent. Inst.,* 135 F.Supp.2d 199, 205 (D.Me.2001). *See generally Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 938–39, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Ponce v. Basketball Fed'n of Commonwealth of Puerto Rico,* 760 F.2d 375, 377 (1st Cir.1985). The allegations of the complaint, when read with reasonable inferences drawn in favor of the plaintiff, do not suggest that the defendant was performing an exclusively and traditionally public function. Indeed, the Supreme Court has held that "the supplying of utility service is not traditionally the exclusive prerogative of the State." *Jack-*

*son v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Nor can the complaint reasonably be read to allege that the state created this element of the defendant's Terms and Conditions or somehow coerced the defendant into adopting it, or that the defendant and the state have a symbiotic relationship. While it is also the case that extensive regulation of a party by the state, standing alone, does not convert that party's actions into state action, *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), it cannot be said that the complaint in this case fails to allege that the state has "provided such significant encouragement ... that the [action] must in law be deemed to be that of the State," *id.* It may well be that the plaintiff cannot prove that the defendant's policy was so "encouraged" by the state or that the defendant and the state were so "entwined" that its actions in this case must be deemed to be those of the state. *See, e.g., Jackson,* 419 U.S. at 357, 95 S.Ct. 449. However, he has presented sufficient factual allegations on this point to allow him to avoid dismissal of this claim at this early stage of the proceedings. *See generally Lovell v. Peoples Heritage Sav. Bank,* 776 F.Supp. 578, 580–589 (D.Me.1991) (motion for summary judgment).

With respect to the second element of the section 1983 claim, the defendant essentially argues that it could not "take" the plaintiff's property because he had agreed to allow the defendant to do what it did. Motion at 13. *See Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract.") However, the plaintiff has alleged, Complaint ¶¶ 11–14, that his consent was coerced, making his contractual consent involuntary and

voidable, Restatement (Second) of Contracts § 175; *City of Portland v. Gemini Concerts, Inc.,* 481 A.2d 180, 182–83 (Me. 1984). If the contract on which the defendant bases its argument is in fact voidable, the consent expressed in that contract may not be enforced. The defendant essentially argues in response that the plaintiff's remedy for duress is limited to rescission of the contract, a claim not asserted in the complaint. Reply at 5. However, the plaintiff in Count I is not seeking relief from the contract but rather relief for an alleged constitutional violation, contending that consent cannot bar that claim at the pleading stage of this action when that consent is alleged to be voidable. Again, it may well be that the plaintiff will be unable to prove duress, but that question is not before the court at this time.

The defendant is not entitled to dismissal of Count I.

### C. Counts II & III

Count II alleges trespass and Count III alleges conversion, both under Maine law. Complaint ¶¶ 30–33, 34–38. Here again, the defendant contends that the plaintiff's contractual consent bars the claim. Motion at 17–20. As discussed above, the question whether the plaintiff executed the contract at issue under duress is not one that may be resolved in the context of a motion to dismiss. At this time, the only question is whether the complaint sufficiently alleges duress. The defendant does contend, in this portion of its reply memorandum, that "Plaintiff has not alleged any form of threat or wrongful act by CMP," Reply at 6, and this is an element of a claim of duress, *Gemini Concerts,* 481 A.2d at 183. However, the complaint, considered in the favorable light required by the applicable legal standard, can be reasonably construed to allege a wrongful act, Complaint at 2 & ¶ 11, assuming *arguendo* that such specificity is necessary under the relatively relaxed strictures of notice pleading. *But see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002).

The defendant is not entitled to dismissal of Counts II and III on this basis.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*